IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

Isaac Collins,                              )

     PLAINTIFF,                            )

VS.                                         )        CV-02-H-3044-NE

Athens City Board of Education; )
et al.,
                                        )

     DEFENDANT.                            )

                                        )

04 JUL 19 PH 3: 08

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

JUL 1 9 2004

## MEMORANDUM OF DECISION

The court has before it the April 28, 2004 motion of

defendant Athens City Board of Education (hereinafter "Board")

for summary judgment.[1]  The Board filed a memorandum in support

of its motion on May 26, 2004 (Doc. # 31) and also filed

evidentiary submissions with the court on May 19, 2004.  (Doc. #

30.)  Plaintiff responded with a memorandum in opposition to the

Board's motion for summary judgment on June 9, 2004 (Doc. # 34)

and also provided his evidentiary submissions to the court on

_____

[1] The motion actually seeks summary judgment for the Board
"dismissing with prejudice all of the claims asserted against it
in the plaintiff's complaint."  Pursuant to the April 23, 2004
order (Doc. #27), the court treated the motion as seeking for the
Board summary judgment only as to the Count II claims which are
the only remaining claims in this action over which the court has
original jurisdiction.  The court observes from the Board's brief
in support of the motion that the Board also viewed the motion as
so limited.

June 1, 2004.  (Doc. # 32.)  Pursuant to the Court's May 12, 2004 order, the motion for summary judgment was deemed submitted, without oral argument, on June 9, 2004.  Upon review of the parties' submissions and for the reasons set out herein, the court concludes that defendant's motion for summary judgment is due to be granted.

## I. Procedural History

Plaintiff Isaac Collins commenced this action on December 13, 2002 by filing a complaint with this court.  (Doc. # 1.)  The complaint consists of six counts and alleges that the Board, the superintendent of schools and several of the Board's members in both their individual and official capacities discriminated against Collins on the basis of his race with regard to his employment with the Athens City Schools.  However, on April, 22, 2004, the court granted plaintiff's own motion dismissing all of the non-Board defendants in their official capacities from Count Two, dismissing Count One and Count Three of the Complaint in their entirety, and dismissing plaintiff's claims for relief with regard to several employment positions for which he claimed he was not hired because of his race under Count Two of the Complaint.  (Docs. # 25, 26.)  In addition, the court granted plaintiff's counsel's oral motion to altogether dismiss from the suit all of the non-Board defendants at the April 15, 2004 pretrial conference. (See Doc. # 27 at ¶ 4.)

2

The plaintiff, therefore, has the following claims remaining against the Board: (1) under Count Two of the Complaint, three Title VII failure to hire claims based on allegations that, because of his race, the Board failed to hire the plaintiff for a 7th Grade Boys Basketball Coach position on October 25, 1998, a B-team Girls Basketball Coach[2] position also in October of 1998, and a Varsity Boys Track Coach position in December of 1998; (2) under Count Four of the Complaint, a state law claim for breach of contract; and (3) under counts Five and Six of the complaint, state law claims for equitable and related relief.  (Doc. # 1.)

The court bifurcated the federal law claims from the state law claims in its April 23, 2004 pretrial order stating that upon a resolution of the federal law claims presented in Count Two, the court will either address the state law claims or dismiss them pursuant to 28 U.S.C. § 1367(c)(3). (Doc. # 27.)  Thus, it is the remaining Title VII failure to hire claims, based on three alleged adverse employment decisions, that the Board seeks to have dismissed with its instant motion for summary judgment.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to

---

[2] On occasion in the briefs and evidentiary submissions, this position is also referred to as the Junior Varsity Girls Basketball Coach position.  It is, nonetheless, the same position.  The court will hereinafter refer to it as the B-team Girls Coach position.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. See id. at 323. Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324.

The substantive law will identify which facts are material and which are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment

4

may be granted.  See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden

on summary judgment is to <u>affirmatively</u> show the absence of
evidence in the record to support a judgment for the non-moving
party on the issue in question.  This method requires more than a
simple statement that the non-moving party cannot meet its burden
at trial but does not require evidence negating the non-movant's
claim; it simply requires the movant to point out to the district
court that there is an absence of evidence to support the non-
moving party's case.  See <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the
movant meets its initial burden by using this second method, the
non-moving party may either point out to the court record
evidence, overlooked or ignored by the movant, sufficient to
withstand a directed verdict, or the non-moving party may come
forward with additional evidence sufficient to withstand a
directed verdict motion at trial based on the alleged evidentiary
deficiency.  However, when responding, the non-movant can no
longer rest on mere allegations, but must set forth evidence of
specific facts.  See <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996)
(citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561
(1992)).

### III. Relevant Undisputed Facts[3]

For over twenty-seven years the plaintiff has been employed
as a vocational career technical teacher with the Athens City

---

[3] If facts are in dispute, they are stated in the manner
most favorable to the plaintiff.  See <u>Fitzpatrick</u>, 2 F.3d at
1115.

Board of Education.  (Collins Depo. at 24, 30-31.)  He has never been fired or suspended from that position.  (Id. at 31.)  From time to time teachers within the Athens City system may seek extra duties such as coaching, collecting tickets at athletic events, etc.  (Bridges Aff. at "File: GBRE".)  Each of these extra duties carries additional responsibility and compensation. (Id. at "File GBD".)  The awarding of such extra duties must be approved by the Board.  (Id.)  Among the criteria used by the Board in making employment decisions are: past performance, ability, and leadership.  (Id. at "File GAKB", p. 2.)  These subjective criteria are evaluated based upon personal interviews of the candidates and information obtained in individual references.  (Id.)  The Board's policies further state that while an employment interview is an important part of the process, principals are not required to interview all prospective employees.  (Id. at "File GAKCD".) They are merely required to ask all applicants who are interviewed the same basic questions. (Id.)  After consulting with the relevant principals, the superintendent is required to make a recommendation to the Board regarding the appointment of all personnel to positions within the system.  (Id. at "File GAK".)  The Board then accepts or rejects the superintendent's recommendation.

From 1989 until 1997, Tee Jackson served as principal of Athens High School. (Jackson Depo. at 22.)  As principal, he also

served as the school's athletic director.  (Id. at 34.)
Principals at other schools within the Athens City system often
confided in Jackson regarding issues related to athletics.  (Id.)
Although the plaintiff, Collins, had no prior experience coaching
basketball, Jackson recommended that Collins be hired as the
middle school girls basketball coach in 1989.  (Id. at 33-34;
Collins Aff. at 1.)  But Jackson soon recognized the Collins was
a poor coach.  Jackson discovered that the middle school
principal had received complaints about plaintiff's failure to
teach the fundamentals of basketball.  (Id. at 53-55, 60-61.)
The Athens High School Girls Basketball Coach, Randy White, also
complained about Collins' coaching abilities.  (Id. at 54; White
Depo. at 26-28.)  Indeed, Jackson received an increasing number
of complaints about plaintiff's ability to teach fundamental
skills to his team six of the seven years Collins served as
Middle School Girls Basketball Coach.  (Jackson Depo. at 86.)
Jackson twice recommended that Collins be removed as the Middle
School Girls Basketball Coach because he was not "getting the job
done like I hoped." (Jackson Depo. 69.)  Ultimately Collins was
removed from the Middle School Girls Basketball Coach coaching
position during his seventh year in that job.  (Id. at 86.)

Jackson, however, subsequently recommended Collins for
another coaching position with the Varsity Boys Track team.  (Id.
at 104.)  Collins was hired for that position in 1996.  (Collins

8

Depo. at 185; Collins Aff. at 2.)  But Collins' supervisor in that position, Garner Ezell, felt that Collins' knowledge of the sport of track was very limited.  (Ezell Depo. at 38.)  And after one year, Collins was removed from the Varsity Boys Track Coach position.  (Collins Aff. at 3.)

### A.    The B-team Girls Basketball Coaching Position

In 1998, Garry Adams, serving as principal of Athens High School, considered candidates to recommend to the Superintendent for the position of B-team Girls Basketball Coach.[4]  Collins did not formally apply for the position, but Adams states that he considered Collins, nonetheless.  (Collins Depo. at 170-171; Adams Depo. at 56.)  Adams did not, however, interview Collins for the position.  (Id.)  Athens High School's Varsity Basketball Coach Randy White recommended John Knight to Adams for the B-Team Girls Basketball Coach position.  (Id. at 55-56.)  Based upon this recommendation and discussions with others, Adams recommended Knight to the Superintendent for the position.  (Adams Depo. at 57-59.)  The Superintendent, Dr. James Irby, subsequently recommended Knight to the Board and the Board hired Knight on October 22, 1998.  (Bridges Depo. at 8, "No. 8563A" and 10-12, "minutes of Oct. 22, 1998"; Irby Depo. at 111-112, Exh. 14, 15.)

---

[4] Collins' has surrendered his claim as to the Seventh Grade Boys Basketball position and thus it is not discussed in the court's recitation of the undisputed facts.  See infra at n. 11.

### B.   Varsity Boys' Track Coaching Postition

In the fall of 1998, Allen Creasy resigned from his position as Varsity Boys' Track Coach at Athens High School.  The open position was then posted from November 20 through November 23, 1998.  (Adams Depo. at 62, Exh. 13; Irby Aff. at 2.)  Collins did not apply for the position during this period.  (Adams Depo. at 67.)  The only person who did apply during the posting period was Bryan Whitlock.  (Adams Depo. at 76.)  Thus, Adams initially thought Whitlock would be the man recommended to Superintendent Irby for the position.  (Id. at 76.)

But not long after the position posting was removed, Collins expressed an interest in the position to Superintendent Irby. (Id.)  Irby instructed Adams to interview both Whitlock and Collins for the position.  (Id.)  Also, before the interviews of Whitlock and Collins, Adams learned from Tee Jackson and Garner Ezell that Collins had previously been removed from a track coaching position due to poor performance.  (Id. Depo. at 29-31.) Additionally, Coach Allen Creasy conveyed to Adams that he and other track coaches had witnessed Collins' poor performance during Collins prior 1996-1997 stint as a track coach. (Creasy Aff.)[5]  On December 8, 1998, Adams conducted interviews for both

---

[5] Defendant submitted evidence in the form of affidavits from Scott Trimble, a former track coach at Muscle Shoals High School and Allen Creasy.  Trimble states he observed that during the 1996-97 track season athletes coached by Collins were tardy
(continued...)

candidates in which he asked each candidate the same written
questions. (Id. at 69-72.) Adams used a scoring system to rate
the candidates' answers to the written questions and determined
Whitlock to have performed better in the interview. (Id. at 69-
72; Irby Depo. at 121.) Adams subsequently recommended Whitlock
for the position to Superintendent Irby.[6] Irby, in turn,
recommended Whitlock to the Board and on December 17, 1998, the
Board accepted Irby's recommendation and Whitlock was hired.[7]
(Bridges Depo. at 13-14, 17-18.)[8]

---

[5](...continued)
to events and wandered the field without supervision (Trimble
Aff.) Additionally, Trimble states that Collins failed to assist
coaches in the supervision of events when requested and that he
reported this to Creasy shortly afterwards. (Id.) Creasy states
that some athletes supervised by Collins missed events altogether
and that Collins was not aware of where students were supposed to
be for various events. (Creasy Aff.) It is the information
within these affidavits that Creasy relayed to Adams prior to
Adams' decision not to recommend Collins for the Varsity Boys'
Track Coach position.

[6] Plaintiff maintains that Adams' decision to recommend
Whitlock was based not in whole or in part upon the
recommendations of others, but solely upon the results of the
interview. (See Doc. #34 at 11-12.)

[7] Although neither the plaintiff nor the defendant state so
in their summaries of the facts, the court will assume from the
fact that this lawsuit exists that both Knight and Whitlock are
white.

[8] Plaintiff, however, arguing that Whitlock was preselected
for the Track Coach position and that the posting and interview
were a sham, points out a partially completed contract with the
Board for the Coaching position was signed by Whitlock and Adams
on September 1, 1998 and that Whitlock's name appeared in system
and state directories as the contact or instructor for "Boys
(continued...)

## IV.  Applicable Substantive Law and Analysis

In employment discrimination cases, courts have long distinguished between "disparate treatment" and "disparate impact" as theories of liability.  <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604,609, 113 S. Ct. 1701, 1705 (1993).  Disparate treatment occurs when "[t]he employer simply treats some people less favorably than others because of their race, color, religion [or other protected characteristics]."  <u>Hazen Paper</u>, 507 U.S. at 609, 113 S. Ct. at 1705.  Disparate impact, by contrast, arises when "employment practices ... are facially neutral in their treatment of different groups but ... in fact fall more harshly on one group than another and cannot be justified by business necessity."   <u>Id</u>.  Plaintiff articulates a disparate treatment claim on the basis race.

The court looks to <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973), for the burden-shifting framework with which to evaluate Title VII claims that are based upon circumstantial evidence of discrimination.[9]  <u>Combs v. Plantation Planters</u>, 106 F.3d 1519,

---

     [8](...continued)
Track".  (Pl.'s Exh. 2 at Exh. 23; Collins Aff. at Exh. C, D.)

     [9] A plaintiff may also seek to assert a claim of discrimination by offering direct evidence of discrimination. Direct evidence is "evidence which, if believed, would prove the existence of a fact without inference or presumption."  <u>Carter v. City of Miami</u>, 870 F.2d 578, 582 (11th Cir. 1989).  "Only the most blatant remarks, whose intent could be nothing other than discrimination on the basis of age, constitute direct evidence of
                                                    (continued...)

12

1527-28 (11th Cir. 1997).  As dictated by the framework, plaintiff must first, bearing a burden of persuasion, establish a prima facie case of discrimination.  Id.  In a racial discrimination case involving failure to hire, a plaintiff may establish a prima facie by showing that he was (1) a member of the protected class, (2) that he applied for and was qualified for the position for which the employer was seeking applicants, (3) that he was denied the position, and (4) that another equally or less qualified individual outside of the protected class was hired or the position remained open.  See Batey v. Stone, 24 F.3d 1330, 1334, n. 11 (11th Cir. 1994); see also Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000).  And although a plaintiff's burden in proving a prima facie case is light, summary judgment against the plaintiff is, nonetheless, appropriate if he fails to satisfy any one of the elements of a prima facie case.  Id. at 1432-33.  "For example, summary judgment is appropriate if [plaintiff] fails to demonstrate that he was qualified to perform the position for which he was

--------------------------------

[9](...continued)
discrimination."  Earley, 907 F.2d at 1081 (11th Cir. 1990).
Plaintiff has provided no direct evidence that the Board had a
discriminatory intent in choosing to not hire Collins.  Nor has
plaintiff provided any evidence that defendant ever made
reference to race in denying Collins either of the positions
still at issue in this case.  Because plaintiff does not cite to
any comment or even a suggestion by defendant (or any of its
employees) that race was a factor in not hiring plaintiff,
plaintiff is barred from advancing his case on a direct evidence
basis.

rejected." Id. at 1433 citing Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1520-21 (11th Cir. 1990).

If the plaintiff successfully establishes a prima facie case, a presumption of discrimination is created and the focus of the enterprise then shifts to the defendant. Bearing only a burden of production, the defendant is called on to articulate a legitimate, nondiscriminatory reason for the challenged employment action. See Combs, 1056 F.3d at 1528 (holding that the employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.")

Having articulated one or more nondiscriminatory reasons for the adverse employment action at issue, the presumption of discrimination is destroyed. Id. Then the plaintiff has the opportunity to present evidence, "including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Id. (citations omitted). But if the plaintiff fails to present sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's articulated reasons is pretextual, then the employer

14

is entitled to summary judgment on the claim.  See id.[10]

In this case Collins has satisfied the requirements of the prima facie case as to the positions asserted.[11]  Collins is black.  Collins was considered for the two positions still at

--------------------

[10] "Although the defendant is entitled to summary judgment in its favor if the plaintiff does not proffer sufficient evidence of pretext, the converse is not necessarily true.  If the plaintiff does proffer sufficient evidence that the defendant's stated reasons are pretextual, the plaintiff still may not be entitled to take his case to a jury.  In Reeves, which dealt with Rule 50, judgment as a matter of law, the Supreme Court stated: '[A] plaintiff's prima facie case, combined with sufficient evidence that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.  This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability.  Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.'  Chapman 229 F.3d at 1025, n11 quoting Reeves 120 S.Ct. at 2109.
While the statement above was made in the context of a Rule 50, not a Rule 56, determination the Supreme Court said that the "standard for granting summary judgment mirrors the standard for granting judgment as a matter of law such that the inquiry under each is the same." Id.

[11] The first position for which Collins alleges he was passed over is the 7th Grade Boys Basketball Coach position.  However, Collins states in his response to the Board's motion for summary judgment that "there is no genuine issue of fact with regard to the date that the Board hired [the comparator for this position] Ron Oakley to serve as 7th Grade Boys Basketball Coach.  Because the Board hired Mr. Oakley on May 21, 1998, that position is beyond the 180-day time frame [sic] for filing suit under plaintiff's April 1, 1999 EEOC charge.  Therefore, plaintiff concedes that [the Board] is entitled to summary judgment with regard to that position."  (Doc. # 34 at 15.)  Thus, as to the 7th Grade Basketball Coach position, defendant's motion is due to be granted.

15

issue.[12]  Collins was not hired by the Board to fill either of the two available coaching positions still at issue. Additionally, the Board does not dispute that in each alleged instance a white individual[13] was hired to fill the posted coaching position.  And while the board rather ambiguously acknowledges that Collins was nominally qualified for the two positions at issue, the Board also states that he was not as qualified as the two individuals who ultimately received the coaching jobs.  Therefore, Collins has met the prima facie requirements.

As to both the B-team Girls position and the Varsity Boys Track position, the Board articulates two separate legitimate non-discriminatory reasons for selecting candidates other than Collins.  First, Collins had been fired from two previous coaching positions.  And second, the principals making the initial recommendations were aware either of reports of Collins' prior poor performance as a coach or of positive recommendations of other applicants.

_____

[12] The court recognizes that the Board disputes that Collins actually applied for the B-team Girls position.  However, the record reflects that he was nonetheless considered by Athens High School principal Garry Adams for that position.  Therefore, for purposes of summary judgment, the court will assume that Collins has satisfied the "application" element of the prima facie case as to the B-team Girls position.

[13] John Knight was the individual hired for the B-team Girls Basketball Coach position and Bryant Whitlock was the individual hired for the Varsity Boys Track Coach position.

The plaintiff's attempts to demonstrate that these articulated reasons are mere pretext fail. The plaintiff's evidence of pretext is simply not significantly probative on the question of racial discrimination by the Board in failing to award Collins either position.

**A.   B-team Girls Basketball Coach Position**[14]

With regard to the basketball coaching position, the Board states that its decision to not hire Collins for this position had nothing to do with race. The Board asserts that Knight was recommended and hired over Collins because Collins had been the subject of significant complaints regarding his inability to teach the fundamentals of basketball during a previous stint coaching basketball within the Athens City school system. In

---

[14] The Board preliminarily argues that Collins has failed to meet the administrative exhaustion requirement as to this position because it is not specifically articulated in his April 1, 1999 EEOC Charge. (Doc. # 6 at Exh. A.) But in the text of the Charge Collins does allege that he has been denied "coaching positions" in addition to the specifically mentioned Varsity Boys Track position. And while the filing of a charge of discrimination is certainly a condition precedent to the bringing of a civil action under Title VII, the "specific words of the charge of discrimination need not presage with literary exactititude the judicial pleadings which may follow." IMPACT v. Firestone, 893 F.2d 1189, 1196 (11th Cir. 1990) quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir. 1970). In fact, the later judicial complaint is limited only by the scope of the administrative investigation which could "reasonably by expected to grow out of the charge of discrimination." Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir. 1985). The court is convinced that it is reasonable for Collins to now explicitly specify the coaching positions he claims he was denied in the instant action based upon the broad charges made within the text of his EEOC charge.

fact, the undisputed record reflects that Collins had been removed from that previous basketball coaching position because of those very complaints.

Collins disagrees with this assessment of his abilities. But he has offered no evidence that this legitimate non-discriminatory reason for not hiring him for this position was pretextual. Specifically, there is no evidence in the record that anyone (other than Collins, himself) was satisfied with Collins' prior performance of his basketball coaching duties. Indeed, the only evidence of pretext that Collins can muster are his own bare assertions that he once played organized basketball and thus knows the fundamentals of basketball. (See Collins Aff. at 2.) But "[the employee's] perception of himself . . . is not relevant [to the question of pretext]. It is the perception of the decision maker which is relevant." Webb v. R&B Holding Co., Inc., 992 F.Supp. 1382, 1387 (S.D. Fla. 1998) quoting Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980). Moreover, "[t]he fact that an employee disagrees with an employer's evaluation of him does not prove pretext." Webb, 992 F.Supp. at 1387 quoting Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d. Cir. 1991). Therefore, with regard to plaintiff's claims related to the Board's failure to hire him for the B-team Girls Basketball position, the defendant's motion for summary judgment is due to be granted.

### B.   Varsity Boys Track Coach Position

As to the track coaching position, the Board articulates several legitimate non-discriminatory reasons for its decision not to hire Collins.  First, the Board points out that Collins had recently been removed from a track coaching position due to poor performance.  Next, the Board point out that it was aware of the reports of other coaches regarding Collins' poor performance during his 1996-1997 stint as a track coach.  And finally, the Board states that Collins did not perform as well during the interview as the successful candidate, Whitlock.

The first two reasons can be restated as this: "Collins was not hired because he was a poor coach."  The Board has produced substantial evidence to support this conclusion.  Both coaches from Collins' own school, as well as at least one coach from another school, registered complaints about Collins' and his team's conduct.  Whitlock's coaching reputation is not provided by the record, but even if plaintiff had produced evidence that Whitlock (the man hired for the job) had also once been dismissed from previous coaching positions, disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are "so apparent as virtually to jump off the page and slap you in the face." Hall v. Ala. Ass'n of Sch. Bds., 326 F.3d 1157, 1167-68 (11th Cir. 2003).  In other words, to create a factual dispute as to pretext, the disparities

19

in qualifications must be such that no reasonable person, exercising impartial judgment, could have chosen Whitlock over the plaintiff for the job.  See Lee v. GTE Florida, Inc., 226 F.3d 1249, 1254 (11th Cir. 2000).  Nothing in the record could support such a conclusion here.

The third non-discriminatory reason articulated by the board - that Collins did not perform as well in the interview as Whitlock - is also not overcome by plaintiff's evidence of pretext.  This articulated reason is founded on subjective scoring of the interview by Principal Adams.  But that, alone, is not evidence of pretext.  "[A]n employer's use of subjective factors in making a hiring decision does not raise a red flag." Wilson v. B/E Aerospace, Inc., 2004 WL 1459558 (11th Cir. June 30, 2004).  In fact, it is clear that an employer may appropriately use legitimate non-discriminatory subjective factors in its decision-making.  Denny v. City of Albany, 247 F.3d 1172, 1186 n.7 (11th Cir. 2001).

In this case, the Board has articulated that it did not hire plaintiff because, between the two candidates, Collins was not best qualified for the job.  Again, the record supports the board's determination as plaintiff had been fired from two previous coaching positions in the same school system due to complaints and poor performance.  On this record, the evidence is insufficient to raise a genuine issue of fact regarding whether

the Board's stated reasons for hiring Whitlock over Collins are pretextual.  <u>None</u> of plaintiff's proffered evidence establishes that he was more qualified for the track coach position than Whitlock, let alone so clearly more qualified that a reasonable juror could infer discriminatory intent from the comparison.[15] In short, this evidence does not rise to the level of proof that is required when an employee attempts to prove pretext by showing he was substantially more qualified than the person hired. Plaintiff has failed to proffer evidence sufficient to meet his burden of establishing that the Board's reason for denying him the position was pretext for race discrimination.  For these reasons, the defendant's motion for summary judgment as to the

---

[15] The court acknowledges that plaintiff does present a partially completed contract signed September 1, 1998 and system and state listings suggesting that Whitlock was pre-selected for the position.  This evidence simply fails to satisfy plaintiff's burden here.  Collins must demonstrate, on the this evidence, that a reasonable jury could find that the defendant did not honestly believe the facts upon which he allegedly based his non-discriminatory decision.  <u>Woodward v. Fanboy, L.L.C.</u>, 298 F.3d 1261, 1265 (11th Cir. 2002).  Even if Whitlock was the presumed selection going into the interview, the record reflects that Collins was given consideration for the job and was rejected on non-discriminatory bases: 1) He had been fired from previous coaching positions and 2) according to Adams he did not do as well in the interview.  Quite frankly, given the plaintiff's track record a reasonable jury could only conclude that there was good reason for Whitlock to be the presumed candidate.  The fact is that the reasons given by the Board were legitimate non-discriminatory reasons to favor Whitlock before and after Collins applied and was interviewed.  The court emphasizes again that it is not to act as a 'super personnel department' that second-guesses employers' business judgments."  <u>Lee v. GTE Florida</u>, 226 F.3d 1249, 1254 (11th Cir. 2000).  Therefore, plaintiff's alleged evidence of pre-selection does not overcome the Board's articulated non-discriminatory reasons.

track coaching position claim is due to be granted.

In summary, the Court finds that no material issue of fact remains and that defendant Athens City Board of Education is entitled to judgment as a matter of law as to all of the federal law claims asserted by plaintiff.  A separate order will be entered to this effect.

Additionally, since all of the plaintiff's federal law claims (and thus all claims over which the court has original jurisdiction in this matter) are due to be dismissed for the reasons state herein, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss such claims, without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

DONE this ___19th___ day of July, 2004.

_____

SENIOR UNITED STATES DISTRICT JUDGE